1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

LESLIE JOHNSON,

11

Plaintiff,

12

v.

13

SILVA, Medical Doctor; AKABARA, Medical
Doctor; LIPSHIR, Transportation Officer;

14

ESPINOZA, Transportation Officer; and S
LAMING, Registered Nurse,

15

Defendants.

16

| Civil No.   09-cv-1568-BEN (POR) |

**REPORT AND RECOMMENDATION
THAT DEFENDANTS' MOTION TO
DISMISS BE GRANTED**

**[Document No. 11]**

17

## I. INTRODUCTION

18    On July 14, 2009, Plaintiff Leslie Johnson, a state prisoner proceeding *pro se*, filed a

19 complaint pursuant to 42 U.S.C. § 1983 against the following Defendants: George Neotti, warden of

20 the Richard J. Donovan Correctional Facility ("R.J.D."); S. Laming, a registered nurse at R.J.D.;

21 Akbari, Dr. (erroneously sued as Akbara), a medical doctor at R.J.D.; Silva, Dr., a medical doctor at

22 R.J.D.; Liptscher (erroneously sued as Lipshir), a transportation officer at R.J.D.; and Espinoza, a

23 transportation officer at R.J.D.  (Doc. No. 1.)[1]  Plaintiff does not indicate whether he sues

24 Defendants in their individual or official capacities.  (Compl. at 2-3.)   On October 1, 2009, this

25 Court sua sponte dismissed Defendant Neotti.  (Doc. No. 4.)  On November 16, 2009, a summons

26 was returned unexecuted by Plaintiff as to Defendant Laming.  (Doc. No. 6.)

27

28    [1]Hereinafter referred to as "Complaint".

On December 29, 2009, Defendants Akbari, Silva, Liptscher, and Espinoza filed a Motion to Dismiss Plaintiff's Complaint or Strike Portions Thereof.  (Doc. No. 11.)  After a thorough review of the parties' papers and all supporting documents, this Court RECOMMENDS Defendant's Motion to Dismiss be **GRANTED** with leave to amend.

## II. BACKGROUND

**A.      Factual Background**

**1. Eighth Amendment: Medical Needs**

Plaintiff alleges Defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Compl. at 3.)  Plaintiff presents this claim in his Complaint and attaches 109 pages of medical records and other documents to support this claim.

**a. Complaint**

Plaintiff is an inmate at Richard J. Donovan Correctional Facility ("R.J.D") in San Diego, California.  (Compl. at 1.)  Plaintiff alleges he was in an automobile accident while returning from Alvarado Hospital to R.J.D on May 2, 2008.  (Compl. at 4.)  An ambulance arrived at the scene and paramedics examined Plaintiff, who described his injuries and level of pain.  (Compl. at 4.)  Plaintiff contends a paramedic asked Defendants Liptscher and Espinoza, the transportation officers, if they planned to take Plaintiff to the hospital to be examined.  (Compl. at 4.)  Plaintiff alleges Defendants Lipstcher and Espinoza told the paramedics they would not bring Plaintiff to a hospital, and instead, Plaintiff would be examined by prison medical staff at R.J.D.  (Compl. at 4.)  Plaintiff contends Registered Nurse S. Laming examined him at R.J.D.'s medical center.  (Compl. at 4.)  Plaintiff described his injuries and level of pain to Laming and asked to be examined by a doctor.  (Compl. at 4.)  Plaintiff alleges Laming told him he was fine, and instructed him to return to his cell, take ibuprofen, and drink tea.  (Compl. at 4.)

///

///

///

///

### b. Attachments

Plaintiff's medical records and other supporting documents provide more details on the prison van accident and Plaintiff's medical care after the accident.  In a declaration, Plaintiff alleges that on the date of the accident, he had a liver biopsy at Alvarado Hospital.  (Decl., Attachments at 2.)[2]  Plaintiff contends that during the journey back to R.J.D. after the procedure, the prison van he was riding in was struck on the rear end by another vehicle.  (Decl., Attachments at 2.)  As a result of the accident, Plaintiff claims in his declaration that he was thrust forward and suffered injuries to his shoulder, back, wrist, and the right side of his body.  (Decl., Attachments at 3.)[3]  In a prison appeal form attached to the Complaint, Plaintiff contends his belief that Defendants Liptscher and Espinoza acted in "reckless disregard to the fact that their passenger … was injured" and should have allowed Plaintiff to be treated at a hospital.  (Attachments at 5.)

In his declaration, Plaintiff contends he was denied medical treatment after the initial exam by Laming.  (Decl., Attachments at 3.)  Plaintiff also alleges he was prescribed pain medications by Defendants Akbari and Silva, and other facility doctors only after several months of complaining and filing inmate appeals.  (Decl., Attachments at 3.)

The medical records show Plaintiff sought medical care numerous times between May 2, 2008, and October 30, 2008.  On May 3, 2008, Plaintiff sought pain medication.  (Attachments at 11.)  The medical records show a physician ordered pain medication and X-rays, and Plaintiff received a cane to aid his walking. (Attachments at 10, 11, 23.)  On May 4, 2008, Plaintiff again sought pain medication and X-rays, and a physician ordered pain medication. (Attachments at 22, 53.)  Plaintiff's records also include a prescription for pain medication from May 5, 2008. (Attachments at 27.)

On May 13, 2008, Plaintiff also sought medical care for back pain and chest pain, and a doctor ordered trigger point injections.  (Attachments at 15, 26, 45.)  On May 13, 2008, a doctor ordered physical therapy, pain medication, and X-rays.  (Attachments at 20.)  On May 14, 2008, a

---

[2]  The Court refers to the supporting documents attached to Plaintiff's Complaint, which appear as Doc. 1-1 on the Court's docket, as "Attachments."

[3]  Upon the Court's review of Plaintiff's Complaint and Attachments, Plaintiff appears to attribute his injuries and pain to the car accident, and not to his liver biopsy.

physician ordered Motrin, which Plaintiff refused.  (Attachments at 42.)  On May 18, 2008, a

physician ordered another pain medication, Toradol.  (Attachments m at 21).  On May 20, 2008,

Plaintiff sought medical care again for pain in his neck, shoulder, and back, and a physician ordered

pain medication, X-rays, and an MRI.  (Attachments at 14.)  On May 21, June 15, and June 16,

2008, Plaintiff again sought medical care for back pain.  (Attachments at 43, 39, 38.)  On June 20,

2008, a medical care provider indicated in progress notes that pain medication was again prescribed

to Plaintiff.  (Attachments at 17.)

On July 2, 2008, Plaintiff received trigger point injections, administered by Dr. Glazener at

Alvarado Hospital.  (Attachments at 8, 65, 69.)  On July 14, 2008, Plaintiff again requested medical

care for back pain.  (Attachments at 30.)  In mid-September, Plaintiff received trigger point

injections again, and in late October, Plaintiff had an MRI.  (Attachments at 7, 16.)  In his

declaration, Plaintiff alleges after his MRI, orthopedic surgeon Dr. Smith ordered surgery on his

shoulder and wrist.  (Decl., Attachments at 3.)  Plaintiff also claims in his declaration that because

he experienced extreme pain after surgery, Dr. Smith prescribed morphine.[4]  (Decl., Attachments at

3.)  Plaintiff contends in his declaration "the [denial] and delay of medical treatment is the reason

[his] surgery has not been successful and is why [he is] still suffering in pain and need[s] prescribed

narcotics just to sleep."  (Decl., Attachments at 2.)

**2. First Amendment: Right to Petition the Government**

Plaintiff alleges Defendants violated his First Amendment right to petition the government

for redress of grievances.  (Compl. at 3.)  Specifically, Plaintiff alleges he filed an administrative

appeal in the prison grievance system, and the appeal was subsequently lost.  (Compl. at 6.)  Again,

Plaintiff presents this claim in his Complaint and attaches documents in support of this claim.

**a. Complaint**

Plaintiff mentions his access to courts claim twice in his Complaint.  First, Plaintiff alleges

his CDC 602 Inmate/Parolee Appeal was lost.  (Compl. at 6.)  Second, Plaintiff contends his appeal

was filed on July 22, 2008.  (Compl. at 6.)

//

---

[4]  It is apparent Plaintiff had surgery, but the medical records do not indicate the date of the surgery.

### b. Attachments

Plaintiff provides more detail on his access to courts claim in his Attachments by including three pertinent documents.  First, Plaintiff includes a CDC 602 Inmate/Parolee Appeal Form dated May 13, 2008.  (Attachments at 4-5.)  In his appeal form, Plaintiff requested X-rays and an MRI or a CAT-Scan, and demanded to be informed why R.J.D.'s medical staff failed to treat him immediately following the accident.  Plaintiff also mentioned filing a civil suit for damages in his appeal form.  Second, Plaintiff also includes a letter from the Inmate Appeals Office dated July 22, 2008, which notified Plaintiff his appeal form was sent to a second level.  (Attachments at 58.)  Third, Plaintiff included a letter dated February 18, 2009, from Plaintiff to the Office of the Inmate Appeals Branch of the State of California Department of Corrections, inquiring about his third-level appeal.  (Attachments at 109.)

### B.    Procedural Background

On July 14, 2009, Plaintiff filed a complaint against Defendants Neotti, Laming, Akbari, Silva, Liptscher, and Espinoza.  (Doc. No. 1.)  On August 4, 2009, the Court dismissed the complaint without prejudice for failure to pay filing fees and/or failing to move to proceed in forma pauperis.  (Doc. No. 2.)  On September 17, 2009, Plaintiff filed a motion for leave to proceed in forma pauperis, (Doc. No. 3) and on October 1, 2009, this Court granted Plaintiff's motion (Doc. No. 4).  Also on October 1, 2009, the Court sua sponte dismissed Defendant Neotti.  (Doc. No. 4.)  On November 16, 2009, a summons was returned unexecuted by Plaintiff as to Defendant Laming.  (Doc. No. 6.)

In his Complaint, Plaintiff alleges Defendants violated his First Amendment right to petition the government for redress of grievances and his Eighth Amendment right to be free from cruel and unusual punishment based on Defendant's alleged deliberate indifference to Plaintiff's medical needs. (Compl. at 3-5.)

On December 29, 2009, Defendants Akbari, Silva, Liptscher, and Espinoza filed a Motion to Dismiss Plaintiff's Complaint, or Strike Portions Thereof.[5]  (Doc. No. 11.)  Defendants seek dismissal in whole or in part on the grounds that: (1) Defendants are immune to suit in their official

---

[5]  Hereinafter referred to as "MTD."

capacities under the Eleventh Amendment; (2) Plaintiff fails to state a claim against Defendants under the Eighth Amendment; (3) Plaintiff fails to state a claim against Defendants under the First Amendment; and (4) Defendants are not liable based on a theory of vicarious liability.  (MTD at 2.)  Defendants seek to strike as superfluous pages 56, 57, 59-62, and 64-108 of the Complaint's Attachments because they appear to be duplicative.  (MTD at 5.)  Also, Defendants seek to strike the multiple identical counts in the Complaint as redundant.[6]  (MTD at 5.)

**C.**     **Defendants' Motion to Strike**

Defendants contend pages 56, 57, 59-62, and 64-108 of the Complaint's attachments are duplicates and should be stricken.  (MTD at 5.)  Under Rule 12(f), a party may move to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED.R.CIV.P. 12(f).  Upon the Court's review, the pages appear to be duplicative and therefore redundant.  Based thereon, it is recommended that the Court strike the duplicate pages of Plaintiff's Attachments, including those on pages 56, 57, 59-62, and 64-108.

# III. DISCUSSION

**A.**     **Standard of Review**

**1.**     **Rule 12(b)(6) Motions to Dismiss**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th

---

[6]  Plaintiff's three counts are identical, save for supporting facts.  Thus, the Court considers Count One, Two, and Three the same.

Cir. 2004) (citing <u>Karam v. City of Burbank</u>, 352 F.3d 1188, 1192 (9th Cir. 2003)); <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995); <u>N.L. Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 563 n.8. A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001) (citing <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)). The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); <u>see</u> <u>Halkin v. VeriFone, Inc.</u>, 11 F.3d 865, 868 (9th Cir. 1993); <u>see also</u> <u>Cholla Ready Mix</u>, 382 F.3d at 973 (citing <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]"). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside the pleadings. <u>Schneider v. Cal. Dep't of Corrs.</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); <u>Jacobellis v. State Farm Fire & Cas. Co.</u>, 120 F.3d 171, 172 (9th Cir. 1997); <u>Allarcom Pay Television Ltd. v. Gen. Instrument Corp.</u>, 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." <u>Schneider</u>, 151 F.3d at 1197 n.1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). <u>Id.</u> (citing <u>Harrell v. United States</u>, 13 F.3d 232, 236 (7th Cir. 1993).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ." <u>Parks Sch. of Bus.</u>, 51 F.3d at 1484

1  (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  The court may also consider

2  "documents whose contents are alleged in a complaint and whose authenticity no party questions,

3  but which are not physically attached to the pleading . . . ."  Branch v. Tunnell, 14 F.3d 449, 454

4  (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119

5  (9th Cir. 2002); Stone v. Writer's Guild of Am. W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

6          **2.       Standards Applicable to Pro Se Litigants**

7          Where a plaintiff appears in propria persona in a civil rights case, the court must construe the

8  pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles

9  Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly

10 important in civil rights cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving

11 liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of

12 claims that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266,

13 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights

14 violations are not sufficient to withstand a motion to dismiss."  Id.; see also Jones v. Cmty. Redev.

15 Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts

16 insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of

17 particularity overt acts which defendants engaged in that support the plaintiff's claim."  Jones, 733

18 F.2d at 649 (internal quotation omitted).

19         Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it

20 determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v.

21 Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing Noll v. Carlson,

22 809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a pro se civil rights complaint may be dismissed,

23 the court must provide the plaintiff with a statement of the complaint's deficiencies.  Karim-Panahi,

24 839 F.2d at 623-24.  But where amendment of a pro se litigant's complaint would be futile, denial of

25 leave to amend is appropriate.  See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

26          **3.       Stating a Claim Under 42 U.S.C. § 1983**

27         To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person

28 acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the

1   plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United

2   States.

3   **B.      Immunity Under the Eleventh Amendment**

4          In his Complaint, Plaintiff does not indicate whether he is suing Defendants in their official

5   or individual capacities, nor does he specify the relief he is seeking.  (Compl. at 2-3.)  Defendants

6   contend they are immune to suit for damages in their official capacities under the Eleventh

7   Amendment.  (MTD at 2.)  Furthermore, Defendants argue that because this Court lacks jurisdiction

8   to entertain a claim for damages against an official in his or her capacity, Plaintiff's claims against

9   each Defendants in his official capacity should be dismissed or stricken.  (MTD at 9.)

10         The Eleventh Amendment prohibits damage actions against state officials acting in their

11  official capacities.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989).  However,

12  the Eleventh Amendment "does not bar actions against state officers in their official capacities if the

13  plaintiffs seek only a declaratory judgment or injunctive relief."  Chaloux v. Killeen, 886 F.2d 247,

14  252 (9th Cir. 1989) (internal quotations omitted); Pennhurst, 465 U.S. at 104-06.  Nor does the

15  Eleventh Amendment bar damage actions against state officials in their personal capacities.  Hafer v.

16  Melo, 502 U.S. 21, 31 (1991).  Personal capacity suits seek to impose liability on state officials for

17  acts taken under color of state law.  Id. at 25-26.  In Hafer, the Court made clear that the Eleventh

18  Amendment does not shield state officials from allegations that they violated a federal right while

19  acting under color of state law.  Id. at 29.  The Amendment only prohibits damage actions against

20  the "official's office"--actions that are in reality suits against the state itself, rather than its individual

21  officials.  Id.; Will, 491 U.S. at 71; Stivers v. Pierce, 71 F.3d 732 (9th Cir. 1995).  "It is well

22  established that the Eleventh Amendment does not bar a federal court from granting prospective

23  injunctive relief against an officer of the state who acts outside the bounds of his authority."  Porter

24  v. Bd. of Trustees, Manhattan Beach Unified Sch. Dist.. ___ F.3d ___, 2002 WL 31246678 at *9

25  (9th Cir. Oct. 8, 2002) (quoting Cerrato v. San Francisco Community College Dist., 26 F.3d 968,

26  973 (9th Cir. 1994); Ex parte Young, 209 U.S. 123, 159-60 (1908)).  Injunctive relief, however, is

27  available only if there is a "real or immediate threat that the plaintiff will be wronged again."  City

28  of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).

In the Ninth Circuit, courts may presume state officials named as defendants in a 42 U.S.C. § 1983 suit necessarily are sued in their personal capacities even if the complaint does not explicitly mention the capacity in which they are sued.  See Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir.) cert. denied, 120 S. Ct. 55 (1999); Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 n. 16 (9th Cir. 1994).  Where the plaintiff is seeking damages against a state official, this "necessarily implies" a personal capacity suit because damages against a state official based on acts alleged to have been taken in his official capacity would be barred by the Eleventh Amendment.  Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1990); Cerrato, 26 F.3d at 973 n.16.

Plaintiff does not indicate whether he sues Defendants in their individual or official capacities, nor does he specify the relief he is requesting.  Further, Plaintiff does not allege he anticipates further violation of his constitutional rights.  However, in his inmate appeal form, Plaintiff references filing a lawsuit for damages.  (Attachments at 4.)  Therefore, Plaintiff is presumably seeking monetary damages.

As discussed above, the Eleventh Amendment bars lawsuits for damages against state officials in their official capacities.  Will, 491 U.S. at 71 n.10.  Accordingly, the Court presumes Plaintiff sues each Defendant in his personal capacity; otherwise, his lawsuit would be barred by the Eleventh Amendment.  Price, 928 F.2d at 828; Cerrato, 26 F.3d at 973 n.16.  Assuming, however, the Court does not presume Plaintiff sues each defendant in his personal capacity, the Court recommends Defendants' Motion to Dismiss Plaintiff's First and Eighth Amendment claims against Defendants in their official capacities be **GRANTED** with prejudice.

## C.    First Amendment

Plaintiff alleges Defendants violated his First Amendment right to petition the government for redress of grievances.  Specifically, Plaintiff alleges his CDC 602 Inmate/Parolee Appeal was lost.  (Compl. at 6.)  Defendants contend Plaintiff fails to state a cognizable First Amendment claim.  (MTD at 2.)

Prisoners have a constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996).  In Lewis, the United States Supreme Court limited the right of access to the courts to

non-frivolous direct criminal appeals, habeas corpus proceedings, and section 1983 actions.  See id.
at 353 n.3, 354-355.  However, the Ninth Circuit has held "the right of meaningful access to the
courts extends to established prison grievance procedures."  Bradley v. Hall, 64 F.3d 1276, 1279
(9th Cir. 1995).  The Ninth Circuit points out that in some cases, "a prisoner may be required to
exhaust the established prison grievance procedure before securing relief in federal court...In those
cases, a prisoner's fundamental right of access to the courts hinges on his ability to access the prison
grievance system."  Id.

        To state a claim for interference with the right of access to the courts, an inmate must
establish that inadequate facilities or interfering regulations have actually frustrated or impeded a
nonfrivolous attack on either his sentence or the conditions of his confinement.  Lewis, 518 U.S. at
353.  Specifically, the plaintiff must allege a specific instance in which he was denied the tools
needed to litigate in a nonfrivolous (1) criminal trial or appeal, (2) habeas proceeding, or (3) section
1983 case challenging the condition of his confinement.  Lewis, 518 U.S. at 355; Sands v. Lewis,
886 F.2d 1166, 1171 (9th Cir. 1989).  The plaintiff must show he suffered an "actual injury," that his
efforts to pursue some claim were hindered.  Lewis, 518 U.S. at 351.  A plaintiff must adequately
describe the claim that was hindered and allege facts that show it was actually hindered in some
way.  Christopher v. Harbury, 536 U.S. 403, 415 (2002).  The analysis in Christopher describes two
kinds of hindered claims: "forward-looking" claims that are currently being impeded, and
"backward-looking" claims that are now impossible to file.  Id. at 412-14.

        Plaintiff fails to provide any evidence showing he has been denied access to the courts.  Prior
to filing his lawsuit, Plaintiff filed an inmate appeal at R.J.D., alleging his medical care at the prison
was inadequate.  (Attachments at 4-5.)  In his Complaint, Plaintiff alleges his inmate appeal form
was lost.  (Compl. at 6.)  However, Plaintiff also contends that his appeal was filed on July 22, 2008.
(Compl. at 6.)  In his Attachments, Plaintiff includes several documents regarding his inmate
appeals: (1) an appeal form dated May 13, 2008, (2) a letter from the Inmate Appeals Office dated
July 22, 2008, notifying Plaintiff that his appeal was sent to a second level, and (3) a letter dated
February 18, 2009, from Plaintiff to the Office of the Inmate Appeals Branch of the State of
California Department of Corrections and Rehabilitation, inquiring about his third-level appeal.

1   (Attachments at 4, 5, 58, 109.)  Based on those documents, it is unclear to the Court if or when the

2   Plaintiff's appeal form was lost.

3          Even assuming Plaintiff's appeal form was lost while in the prison grievance system,

4   Plaintiff does not allege an "actual injury" resulted from the loss as required by <u>Lewis</u>, nor does he

5   explain how the loss of his appeal form has hindered his claims.  <u>Lewis</u>, 518 U.S. at 351.  Further,

6   Plaintiff does not contend he has a "forward-looking" claim that is currently being impeded by the

7   loss of his appeal form, nor does he claim he has a "backward-looking" claim that cannot be filed

8   due to the loss of the appeal form.  <u>Christopher</u>, 536 U.S. at 412-14.  In fact, Plaintiff's § 1983 claim,

9   alleging Defendants' deliberate indifference to Plaintiff's medical needs, is unaffected by the loss of

10  his inmate appeal form.  At this time, Defendants do not move to dismiss Plaintiff's Eighth

11  Amendment claim based on Plaintiff's failure to exhaust.  Therefore, even if Plaintiff's appeal form

12  was lost, failure to exhaust, which could potentially impede Plaintiff's § 1983 claim, is not currently

13  an issue before the Court.

14         Finally, Plaintiff does not plead any facts suggesting the named Defendants were involved

15  with the loss of his appeal form.  In his Complaint, Plaintiff mentions Defendants Liptscher and

16  Espinoza in regards to his medical care immediately following the accident.  (Compl. at 4.)  In his

17  declaration, Plaintiff mentions Defendants Akbari and Silva in regard to his medical needs in the

18  weeks and months after the accident.  (Decl., Attachments at 3.)  However, Plaintiff does not suggest

19  any of the Defendants were involved in the loss of his appeal form, nor does he allege the name of

20  anyone he believes is responsible for losing his appeal form.  Based thereon, the Court recommends

21  Defendants' Motion to Dismiss Plaintiff's First Amendment claim against Defendants be

22  **GRANTED** with leave to amend.

23  **D.      Eighth Amendment**

24         Plaintiff alleges Defendants were deliberately indifferent to his medical needs in violation of

25  his Eighth Amendment right to be free from cruel and unusual punishment.  (Compl. at 3.)

26  Specifically, Plaintiff first alleges Defendants Liptscher and Espinoza, transportation officers, acted

27  in reckless disregard of his medical needs by bringing him to the prison medical facility instead of a

28  hospital after he suffered injuries in a car accident.  (Attachments at 5.)  Second, Plaintiff alleges

1  medical doctor Defendant Akbari "knew Plaintiff's condition was dire and fail[ed] to prescribe a[n]

2  effective pain medication regimen to help alleviate the pain Plaintiff experienced." (Compl. at 2.)

3  Third, Plaintiff alleges medical doctor Defendant Silva "failed to perform his fiduciary duties to

4  Plaintiff [despite] Plaintiff's insistence … that he was very sick and in pain." (Compl. at 2.)

5  Defendants contend Plaintiff fails to state an Eighth Amendment claim. (MTD at 2.)[7]

6       **1.  Discussion**

7       "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action

8  under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "A determination of 'deliberate

9  indifference' involves an examination of two elements: the seriousness of the prisoner's medical

10  need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050,

11  1059 (9th Cir. 1992).

12       First, "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could

13  result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin,

14  974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).

15       Second, to establish deliberate indifference, a defendant must purposefully ignore or fail to

16  respond to a prisoner's pain or possible medical need. McGuckin, 974 F.2d at 1060. Deliberate

17  indifference to medical needs occurs when prison officials "'deny, delay, or intentionally interfere

18  with medical treatment.'" Hunt v. Dental Dep't, 865 F.2d 198, 201 (9th Cir. 1989) (quoting

19  Hutchinson v. US, 838 F.2d 390, 394 (9th Cir. 1984)). Specifically, "this is true whether the

20  indifference is manifested by prison doctors in their response to the prisoner's needs, or by prison

21  guards in intentionally denying or delaying access to medical care or intentionally interfering with

22  the treatment once prescribed." Estelle, 429 U.S. at 104-05 (footnotes omitted). "In order to show

23  deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted

24  with a culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 302 (1991). The indifference to

25  medical needs also must be substantial; inadequate treatment due to malpractice, or even gross

26  negligence, does not amount to a constitutional violation. Estelle, 429 U.S. at 106; Toguchi v.

27  Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard.")

28
_____
[7]  Upon the Court's review of Plaintiff's Complaint and Attachments, it appears Plaintiff attributes his injuries and pain to the car accident, and not to his liver biopsy.

1    (citing <u>Hallett v. Morgan</u>, 296 F.3d 732, 1204 (9th Cir. 2002); <u>Wood v. Housewright</u>, 900 F.2d 1332,

2    1334 (9th Cir. 1990)).

3          The court must focus on the seriousness of the prisoner's medical needs and the nature of the

4    defendants' response to those needs.  <u>See</u> <u>McGuckin</u>, 974 F.2d at 1059.  Differences in judgment

5    between an inmate and prison medical personnel regarding appropriate medical diagnosis and

6    treatment are not enough to establish a deliberate indifference claim.  <u>Sanchez v. Vild</u>, 891 F.2d 240,

7    242 (9th Cir. 1989).  Further, a prison inmate has no independent constitutional right to outside

8    medical care additional and supplemental to the medical care provided by the prison staff within the

9    institution.  <u>See</u> <u>Roberts v. Spalding</u>, 783 F.2d 867, 870 (9th Cir. 1986).

10         **2.  Defendants Liptscher and Espinoza**

11         As to Defendants Liptscher and Espinoza, Plaintiff fails to plead sufficient facts indicating

12   they were deliberately indifferent to his medical needs.  In his inmate appeal form, Plaintiff alleges

13   Defendants Liptscher and Espinoza acted with reckless disregard to Plaintiff's medical needs by

14   returning Plaintiff to R.J.D.'s medical center instead of bringing him to a hospital following the

15   vehicle accident.  (Attachments at 5.)  Plaintiff adequately pleads sufficient facts for the first element

16   of deliberate indifference, his serious medical need.  <u>McGuckin</u>, 974 F.2d at 1059.  In his

17   declaration, Plaintiff states that, following the car accident, he experienced pain in his wrist,

18   shoulder, back, and the right side of his body, and paramedics indicated Plaintiff should receive

19   medical treatment.  (Decl., Attachments at 2, 3.)  A failure to treat Plaintiff's injuries or alleviate his

20   pain with medication likely would have resulted in "unnecessary and wanton infliction of pain," and

21   thus Plaintiff adequately pleads sufficient facts to demonstrate his serious medical need.  <u>McGuckin</u>,

22   974 F.2d at 1059 (quoting <u>Estelle</u>, 429 U.S. at 104).

23         However, Plaintiff has not adequately plead sufficient facts for the second element that

24   Defendants acted with a culpable state of mind in denying, delaying, or interfering with Plaintiff's

25   medical care.  <u>Wilson</u>, 501 U.S. at 302; <u>Hunt</u>, 865 F.2d at 201.  Rather, the record shows Defendants

26   Liptscher and Espinoza returned Plaintiff to R.J.D. after the car accident, and Plaintiff received

27   medical treatment the same afternoon at the prison medical center.  (Compl. at 4.)  Therefore,

28   Defendants Liptscher and Espinonza ensured Plaintiff received <u>prompt</u> medical care by driving him

back to R.J.D. after the accident and did not deny, delay, or interfere with Plaintiff's medical care.

Additionally, although Plaintiff preferred to receive treatment for his injuries at a community

hospital instead of at R.J.D., he had no constitutional right to outside medical care.  Roberts, 783

F.2d at 870.  Thus, Plaintiff does not allege facts indicating Defendants Liptscher and Espinoza

acted with a culpable state of mind in denying, delaying, or interfering with Plaintiff's medical care.

Wilson, 501 U.S. at 302; Hunt, 865 F.2d at 201.

### 3. Defendants Akbari and Silva

As to Defendants Akbari and Silva, both medical doctors, Plaintiff fails to plead sufficient

facts showing they were deliberately indifferent to his medical needs.  Plaintiff mentions Defendants

Akbari and Silva by name twice respectively in his allegations in the Complaint and in his

declaration in his Attachments.  On page 2 of the Complaint, Plaintiff alleges Dr. Akbari failed to

prescribe effective pain medication and Defendant Silva failed to perform his fiduciary duties.  In his

declaration on page 3 of the Attachments, Plaintiff alleges Defendants Akbari and Silva prescribed

him pain medications only after several months of complaining.

Several references to Defendants Akbari and Silva also appear in the medical records

contained in the Attachments.  On medical forms dated May 3, 4, 5, and 8, 2008, it appears

Defendant Akbari evaluated Plaintiff's injuries, prescribed pain medication, and ordered X-rays.

(Attachments at 27, 48, 51, 54.)  On page 7, Defendant Silva is listed as the ordering physician for

an MRI Plaintiff underwent in October of 2008.[8]

As discussed above, Plaintiff has plead sufficient facts for the first element of deliberate

indifference to medical needs by demonstrating his serious medical need.  However, Plaintiff has not

met the second element by alleging facts that show Defendants Akbari and Silva acted with a

culpable state of mind in purposefully ignoring or failing to respond to his serious medical needs.

Wilson, 501 U.S. at 302; McGuckin, 974 F.2d at 1060.  Plaintiff's medical records show that

Defendant Akbari prescribed pain medication and ordered X-Rays in the days following the car

accident.  (Attachments at 27, 48, 51, 54.)  The medical records contradict Plaintiff's allegation that

Defendant Akbari prescribed medication only after months of complaining.  (Attachments at 3.)

---

[8] The Court is unable to determine whether Defendant Silva's name is written on pages 17 and 20.

1   Based on Plaintiff's medical records, there is no evidence Defendant Akbari acted with a culpable

2   state of mind by purposefully ignoring or failing to respond to Plaintiff's medical needs.  Wilson,

3   501 U.S. at 302; McGuckin, 974 F.2d at 1060.  On the contrary, Defendant Akbari appears to have

4   responded to Plaintiff's complaints of pain by prescribing medication and ordering X-Rays.

5   Although Plaintiff requested X-Rays and an MRI or a CAT-Scan, a difference of opinion between an

6   inmate and a medical provider over medical treatment does not amount to deliberate indifference.

7   (Attachments at 5; Sanchez, 891 F.2d at 242.)

8           With regard to Defendant Silva, Plaintiff does not provide details about how the Defendant

9   "failed to perform his fiduciary duties."  (Compl. at 2.)  The only reference to Defendant Silva in the

10  medical records shows that Defendant Silva ordered an MRI for Plaintiff, which Plaintiff underwent

11  in October.  (Attachments at 7.)  Plaintiff does not contend he had other contact with Defendant

12  Silva in the months before his MRI during which Defendant Silva ignored his serious medical needs.

13  McGuckin, 974 F.2d at 1060.  Although Plaintiff alleges that Defendant Silva also prescribed

14  medication after months of Plaintiff's complaining, the medical records do not support that

15  contention.  Thus, Plaintiff does not allege facts indicating Defendant Silva acted with a culpable

16  state of mind in purposefully ignoring or failing to respond to Plaintiff's medical needs.  Wilson, 501

17  U.S. at 302; McGuckin, 974 F.2d at 1060.

18          Plaintiff has not adequately plead facts that meet the high legal standard for deliberate

19  indifference for any of the Defendants.  Toguchi, 391 F.3d at 1060.  Based thereon, the Court

20  recommends Defendants' Motion to Dismiss Plaintiff's Eighth Amendment Claim of deliberate

21  indifference to his medical needs against Defendants Liptscher, Espinoza, Akbari, and Silva be

22  **GRANTED** with leave to amend.

23          **E.      Respondeat Superior**

24          Plaintiff alleges Defendants Akbari, Silva, Liptscher, and Espinoza each committed

25  constitutional violations.[9]  Defendants contend any effort to impute liability on any Defendants

26

27

_____

28  [9] Upon review of the Complaint, it is difficult to determine if Plaintiff sues Defendants in their supervisory roles.  Therefore, the Court will address the issue of respondeat superior.

1   under a theory of vicarious liability or respondeat superior would be impermissible if it were alleged.

2   (MTD at 13.)

3          Liability for a civil rights violation under Section 1983 may not be based on a theory of

4   respondeat superior.  Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 693

5   (1978).  "Liability under [§] 1983 arises only upon a showing of personal participation by the

6   defendant."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, "a supervisory official,

7   such as a warden, may be liable under Section 1983 only if he was personally involved in the

8   constitutional deprivation, or if there was a sufficient causal connection between the supervisor's

9   wrongful conduct and the constitutional violation."  Henry v. Sanchez, 923 F. Supp. 1266, 1272

10  (C.D. Cal. 1996).  For there to be a sufficient causal connection, the official must have known of a

11  constitutional violation; it is not enough to claim that an official should have known of a

12  constitutional deprivation because of a complaint brought through the prison appeals system.  Barry

13  v. Ratelle, 985 F. Supp. 1235, 1239 (S.D. Cal. 1997).

14         It is unclear if Plaintiff suggests any of the Defendants are liable under a theory of respondeat

15  superior.  Rather, Plaintiff appears to allege each was personally involved in violating his

16  constitutional rights and presumably sues each Defendant in his individual capacity, as discussed

17  above. Assuming, however, Plaintiff sues any Defendants based upon a theory of respondeat

18  superior, the Court recommends Defendants' Motion to Dismiss Plaintiff's First and Eighth

19  Amendment claims against Defendants be **GRANTED**.

20  **F.      Dismissal For Failure to Serve**

21         A review of the Court's docket indicates no proof of service has been filed as to Defendant S.

22  Laming.  See Walker v. Sumner,  14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a pro se plaintiff

23  fails to provide the Marshal with sufficient information to effect service, the court's sua sponte

24  dismissal of those unserved defendants is appropriate under Fed.R.Civ.P. 4(m)).

25         Accordingly, this Court RECOMMENDS Plaintiff to show cause no later than **July 19,**

26  **2010**, why the claims against this Defendant should not be dismissed for want of prosecution

27  pursuant to Fed.R.Civ.P. 4(m).  If Plaintiff wishes to proceed with his claims against this Defendant

28  he must provide the Court with proof of proper service by **July 26, 2010**.  If he does neither, the

Court recommends Defendant Laming be dismissed from this action in accordance with Fed.R.Civ.P. 4(m)).

### IV. CONCLUSION

For the reasons set forth herein, it is recommended that Defendants' motion to dismiss be **GRANTED**. The Court recommends that:

(1)     Defendants' Motion to Dismiss Plaintiff's First and Eighth Amendment claims against Defendants in their official capacities be **GRANTED** with prejudice.

(2)     Defendants' Motion to Dismiss Plaintiff's First Amendment claim against Defendants be **GRANTED** with leave to amend.

(3)     Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendants be **GRANTED** with leave to amend.

(4)     Defendants' Motion to Dismiss Plaintiff's First and Eighth Amendment claims against Defendants based on a theory of respondeat superior be **GRANTED**.

(5)     Plaintiff shall show cause why the claims against Defendant S. Laming should not be dismissed.  If Plaintiff wishes to proceed with his claims against this Defendant, he must provide the Court with proof of proper service.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1994).

//
//
//
//
//
//
//
//
//

1       This Report and Recommendation will be submitted to the United States District Court judge

2 assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

3 objections with the Court and serve a copy on all parties on or before **July 26, 2010.**  This document

4 should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall

5 be served and filed **no later than 14 days** after being served with the objections.  The parties are

6 further advised that failure to file objections within the specified time may waive the right to appeal

7 the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8             **IT IS SO ORDERED.**

9 DATED:  July 1, 2010

10

11                 LOUISA S PORTER

                United States Magistrate Judge

12

13 cc:         The Honorable Roger T. Benitez

             all parties

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28