1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10   LESLIE JOHNSON,                          Civil No.    09-CV-1568-BEN (POR)

11                          Plaintiff,
                                             **REPORT AND RECOMMENDATION**
12                                           **DENYING DEFENDANTS' MOTION**
                                             **TO STRIKE PORTIONS OF**
13            v.                             **PLAINTIFF'S FIRST AMENDED**
                                             **COMPLAINT, AND GRANTING IN**
14                                           **PART AND DENYING IN PART**
     SILVA, Medical Doctor; AKABARA, Medical **DEFENDANTS' MOTION TO DISMISS**
15   Doctor; LIPSHIR, Transportation Officer; **PLAINTIFF'S FIRST AMENDED**
     ESPINOZA, Transportation Officer; and S  **COMPLAINT**
16   LAMING, Registered Nurse,
                                             **[ECF No. 38]**
17                          Defendants.

18

19                              **I. INTRODUCTION**

20          On December 1, 2010, Plaintiff Leslie Johnson, a state prisoner proceeding *pro se*, filed a

21   First Amended Complaint pursuant to 42 U.S.C. § 1983 against Defendants Silva, Akbari, Liptscher,

22   and Espinoza, in their individual capacities.[1]  (ECF No. 34.)  Plaintiff raises the following claims:

23   (1) deliberate indifference to medical needs[2]; (2) conspiracy to be deliberately indifferent to serious

24

25   ───────────────────────
     [1]Plaintiff also names Warden Neotti in his First Amended Complaint, who the Court sua sponte
26   dismissed on October 1, 2009.  (ECF No. 4.)  Based theron, the Court hereby disregards portions of the
     First Amended Complaint stating claims against Warden Neotti.

27   [2] Under Plaintiff's first claim for "State Law Claims," Plaintiff claims "defendants have denied plaintiff
     of his rights to equal protection of the law, state and federal law claims, due process and right to medical
28   care..."  (ECF No. 34 at 24-25.)  In Claim 2, styled as an "Application for State Law Claims and
     Regulations,"Plaintiff contends each defendant, while acting under state law, was deliberately

                                      - 1 -                        09cv1568-BEN (POR)

1    medical needs[3]; (3) breach of implied and express contract; (4) intentional infliction of emotional

2    distress; and (5) gross neglect or negligence.[4]  *Id.*  As Plaintiff does not delineate which Defendants

3    he is suing with respect to each cause of action, the Court shall assume Plaintiff sues each Defendant

4    for each cause of action.

5            On January 14, 2011, Defendants Akbari, Silva, Liptscher, and Espinoza filed a Motion to

6    Dismiss Plaintiff's First Amended Complaint and/or Strike Portions Thereof.  (ECF No. 38.)

7    Defendants contend there is no actionable claim against Defendants and therefore, each of Plaintiff's

8    claims must be dismissed.  *Id.*

9            Plaintiff filed an Opposition to Defendants' Motion to Dismiss on May 11, 2011.  (ECF No.

10   48.)   Plaintiff contends he has presented a proper claim based on Defendants' acts for deliberate

11   indifference to his medical needs.  *Id.* at 21.  Second, Plaintiff contends Defendants "ignored

12   plaintiff's request for proper and adequate medical care, and they did so with a common

13   understanding and knowledge or awareness of one another."  *Id.* at 26.  Third, Plaintiff contends

14   CCR Title 15 establishes an express and implied contract between him and Defendants.  *Id.* at 28-29.

15   Fourth, Plaintiff contends Defendants' "outrageous" acts caused him severe emotional distress.  *Id.*

16   at 30-32.  Finally, Plaintiff contends Defendants failed to act with "due care."  *Id.* at 32.

17           On May 20, 2011, Defendants filed a Reply to Plaintiff's Opposition.  (ECF No. 49.)

18   Defendants contend Plaintiff's Opposition offers no basis for rejecting Defendants' motion to

19   dismiss.  (ECF No. 49 at 2.)

20

21

22   _____

23   indifferent toward Plaintiff's serious medical need.  *Id.* at 25-26.  In Claim 4, which is styled as
     "Punitive State Law Sufferings," Plaintiff claims each defendant was aware of and ignored his
     complaints and desires to receive medical care.  *Id.* at 27-28.  Finally, in Claim 6, entitled "Denial of

24   Medical Care," Plaintiff re-alleges he was improperly denied competent medical care.  *Id.* at 33-34.
     Although Plaintiff asserts his First, Second, Fourth, and Sixth claims are distinct in his Opposition, the

25   Court finds these claims each allege deliberate indifference to Plaintiff's serious medical need, and
     therefore shall address these claims collectively in this Report and Recommendation.

26
     [3] Plaintiff's Third Cause of Action is styled as "Co-Conspiratorial (State-Law) Claims, which the Court

27   construes as a claim for conspiracy to be deliberately indifferent to Plaintiff's serious medical needs.
     (ECF No. 34 at 26-27.)

28
     [4] Plaintiff's Eighth Cause of Action is styled "Torts of Gross Neglect," which the Court construes as a
     claim for gross neglect or negligence.  (ECF No. 34 at 35-36.)

After a thorough review of the parties' papers and all supporting documents, the Court hereby RECOMMENDS Defendants' Motion to Strike Plaintiff's First, Second, Fourth and Sixth causes of action be DENIED, and Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

## II. BACKGROUND

### A.  Factual Background

Plaintiff presents facts related to his claims in his First Amended Complaint as well as in the Attachments to his original Complaint, which consists of 109 pages of medical records and other documents to support his claims.  (ECF No. 1-1, hereinafter "Attachments.")[5]

#### 1.  First Amended Complaint

Plaintiff Leslie Johnson is an inmate at the R.J. Donovan State Prison Facility ("R.J.D." or "Donovan") in San Diego, California. [First Amended Complaint ("FAC") (ECF No. 34) p. 3, ¶ 3.] Plaintiff claims that he was injured in a rear-end vehicular accident while being transported back to Donovan from Alvarado Hospital, after receiving a liver biopsy.  [FAC, pp. 8-9, ¶¶ 22a-25.] Plaintiff further alleges as follows: An ambulance responded to the scene of the accident, and Plaintiff was examined by paramedics. Plaintiff told paramedics of the location of his pain. The paramedics suggested that Plaintiff be taken to the hospital to check out Plaintiff's alleged injuries. The transportation officers–Defendants Liptscher, and Espinoza– responded, stating that they would be taking Plaintiff back to the prison to be examined by prison medical staff. [FAC, pp. 9-10, ¶¶ 25-26.]

Plaintiff states that upon his arrival back in prison, that same day, he was seen by Registered Nurse S. Laming, who advised Plaintiff that he was fine to return to his cell and that he should take ibuprofen and drink tea. Plaintiff contrasts the medical treatment provided to the corrections officers, who were taken to the hospital, and himself, and claims that the difference in the treatment received between the officers who were taken to the hospital, and himself, who was returned to be treated by

---

[5] Although Plaintiff did not attach the 109 pages of medical documents and other exhibits to his First Amended Complaint, both Plaintiff and Defendants rely on them in either supporting or opposing the instant Motion to Dismiss. Additionally, material properly submitted with the original complaint may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 (9th Cir. 1990).  Accordingly, the Court shall refer to these documents to the extent necessary in this Report and Recommendation.

jail medical staff, is indicative of deliberate indifference to his serious medical needs. [FAC, pp. 10, ¶¶ 27.]  Plaintiff further claims that the deliberate indifference is evidenced by the fact that upon his return to the jail medical facility, he was initially treated by a nurse and not a doctor. [FAC, pp.11, ¶ 30.] Plaintiff claims that only months later did he receive treatment from medical doctors – defendants Akbari and Silva, amongst other facility doctors. [FAC, pp. 11, ¶ 31.]

Plaintiff also claims that pain medications and x-rays, as well as a cane and MRIs were ordered by medical staff, but took months to receive. [FAC, pp. 12-13, ¶¶ 32-35.] Plaintiff claims that due to the wrong decisions of defendants, he was forced to endure months of pain and suffering. Specifically, Plaintiff points to the decision of Defendants Liptscher or Espinoza, to return Plaintiff to the prison for medical treatment and of Defendant Laming, to provide plaintiff with ibuprofen. [FAC, pp. 13-14, ¶ 38.] Plaintiff further alleges that the denials of medical treatment and surgery caused him to suffer "future harm related to neglect" and that he is in such pain so as to require narcotic medication in order to sleep. [FAC, pp. 13-14, ¶ 38.] Plaintiff further contends that Nurse Laming was not qualified to assess his medical needs upon his return to prison. [FAC, p. 14, ¶ 40.]

Plaintiff claims that the failure to provide him with x-rays and allow him to be examined by a doctor immediately upon his return to the prison indicates that he did not receive prompt medical care. [FAC, pp. 15-16, ¶ 43.] Plaintiff claims that nurse Laming mis-diagnosed him when deciding to provide him with ibuprofen and that therefore he needlessly suffered pain for several months. [FAC, pp. 15-16, ¶ 43.] Plaintiff goes on to complain that medical orders he received after being examined by nurse Laming took several months to be carried out. Plaintiff claims that had he been transported to the hospital by the paramedics, he would have received the protections, provisions, and the proper medical care which he was entitled to receive. [FAC, pp. 17-18, ¶ 46.]

Plaintiff states that Defendants Silva and Akbari both made orders for medication, x-rays, an MRI, a cane, and physical therapy for plaintiff. However, Plaintiff claims Defendants did not follow up to ensure these orders were complied with and failed to check up on Plaintiff after entering the orders. [FAC, pp. 18, ¶ 47.] Plaintiff claims that Defendants Silva and Akbari further failed to check

up on him for several months despite Plaintiff filling out several inmate complaints and medical requests. [FAC, pp. 18, ¶ 47.] Plaintiff goes on to complain that tests were ordered and that medications were prescribed but not immediately provided due to pharmacy "screw ups". [FAC, pp. 18-19, ¶ 49.] Specifically, Plaintiff claims that Defendant Silva purportedly ordered an MRI for Plaintiff on May 20, 2008, but he did not actually receive the MRI until October 2008. [FAC, pp. 19-20, ¶ 51.]

Plaintiff claims to not assert any imputed or supervisory liability against any Defendants, and claims to sue Defendants solely in their individual capacities. [FAC, p. 20, ¶ 54.] Plaintiff goes on to contend that his injuries were attributable to the lack of training of Defendants and the improper "employment" of their own abilities when transporting inmates to and from the local community hospital. [FAC, p. 21, ¶ 55.] Plaintiff goes on to allege that the deficient performance of Defendants Liptscher and Espinoza in responding to his medical needs after the car accident and the failure of Defendant doctors Silva and Akbari to provide him with continuous medical care violated his rights to "continuous medical care and treatment." [FAC, pp. 21-22, ¶ 56.]

### 2. Attachments

The medical records and other supporting documents Plaintiff attached to his original Complaint provide more details on the prison van accident and Plaintiff's medical care after the accident.  In a declaration attached to his original Complaint, Plaintiff alleges that on the date of the accident, he had a liver biopsy at Alvarado Hospital.  (Decl., Attachments at 2.)[6]  Plaintiff contends that during the journey back to R.J.D. after the procedure, the prison van he was riding in was struck on the rear end by another vehicle.  (Decl., Attachments at 2.)  As a result of the accident, Plaintiff claims in his declaration that he was thrust forward and suffered injuries to his shoulder, back, wrist, and the right side of his body.  (Decl., Attachments at 3.)[7]  In a prison appeal form attached to the Complaint, Plaintiff contends his belief that Defendants Liptscher and Espinoza acted in "reckless disregard to the fact that their passenger … was injured" and should have allowed Plaintiff to be treated at a hospital.  (Attachments at 5.)

---

[6] The Court refers to the supporting documents attached to Plaintiff's Complaint, which appear as Doc. 1-1 on the Court's docket, as "Attachments."

[7] Upon the Court's review of Plaintiff's Complaint and Attachments, Plaintiff appears to attribute his injuries and pain to the car accident, and not to his liver biopsy.

In his declaration, Plaintiff contends he was denied medical treatment after the initial exam by Laming.  (Decl., Attachments at 3.)  Plaintiff also alleges he was prescribed pain medications by Defendants Akbari and Silva, and other facility doctors only after several months of complaining and filing inmate appeals.  (Decl., Attachments at 3.)

The medical records show Plaintiff sought medical care numerous times between May 2, 2008, and October 30, 2008.  On May 3, 2008, Plaintiff sought pain medication.  (Attachments at 11.)  The medical records show a physician ordered pain medication and X-rays, and Plaintiff received a cane to aid his walking. (Attachments at 10, 11, 23.)  On May 4, 2008, Plaintiff again sought pain medication and X-rays, and a physician ordered pain medication. (Attachments at 22, 53.)  Plaintiff's records also include a prescription for pain medication from May 5, 2008. (Attachments at 27.)

On May 13, 2008, Plaintiff also received medical care for back pain and chest pain, and a doctor ordered trigger point injections.  (Attachments at 15, 26, 45.)  That same day, after treating Plaintiff, a doctor ordered physical therapy, pain medication, and X-rays.  (Attachments at 20.)  On May 14, 2008, a physician ordered Motrin, which Plaintiff refused.  (Attachments at 42.)  On May 18, 2008, a physician ordered another pain medication, Toradol.  (Attachments at 21).  On May 20, 2008, Plaintiff received medical care again for pain in his neck, shoulder, and back, and a physician ordered pain medication, X-rays, and an MRI.  (Attachments at 14.)  On May 21, June 15, and June 16, 2008, Plaintiff again sought medical care for back pain.  (Attachments at 43, 39, 38.)  On June 20, 2008, a medical care provider indicated in progress notes that pain medication was again prescribed to Plaintiff.  (Attachments at 17.)

On July 2, 2008, Plaintiff received trigger point injections, administered by Dr. Glazener at Alvarado Hospital.  (Attachments at 8, 65, 69.)  On July 14, 2008, Plaintiff again requested medical care for back pain.  (Attachments at 30.)  In mid-September, Plaintiff received trigger point injections again, and in late October, Plaintiff had an MRI.  (Attachments at 7, 16.)  In his declaration, Plaintiff alleges after his MRI, orthopedic surgeon Dr. Smith ordered surgery on his shoulder and wrist.  (Decl., Attachments at 3.)  Plaintiff also claims in his declaration that because

1  he experienced extreme pain after surgery, Dr. Smith prescribed morphine.[4]  (Decl., Attachments at

2  3.)  Plaintiff contends in his declaration "the [denial] and delay of medical treatment is the reason

3  [his] surgery has not been successful and is why [he is] still suffering in pain and need[s] prescribed

4  narcotics just to sleep."  (Decl., Attachments at 2.)

5              **B.     Procedural Background**

6          On July 14, 2009, Plaintiff filed a complaint against Defendants Neotti, Laming, Akbari,

7  Silva, Liptscher, and Espinoza.  (ECF. No. 1.)  In his Complaint, Plaintiff alleged Defendants

8  violated his First Amendment right to petition the government for redress of grievances and his

9  Eighth Amendment right to be free from cruel and unusual punishment based on Defendant's

10  alleged deliberate indifference to Plaintiff's medical needs.  On October 1, 2009, the Court sua

11  sponte dismissed Defendant Neotti.  (ECF No. 4.)

12          On December 29, 2009, Defendants Akbari, Silva, Liptscher, and Espinoza filed a Motion to

13  Dismiss Plaintiff's Complaint, or Strike Portions Thereof.  (ECF No. 11.)  Defendants sought

14  dismissal on the grounds that: (1) Defendants are immune to suit in their official capacities under the

15  Eleventh Amendment; (2) Plaintiff fails to state a claim against Defendants under the Eighth

16  Amendment; (3) Plaintiff fails to state a claim against Defendants under the First Amendment; and

17  (4) Defendants are not liable based on a theory of vicarious liability.  On May 10, 2010, Plaintiff

18  filed an Opposition to Defendants' Motion to Dismiss.  (ECF No. 21.)  Defendants filed a Reply on

19  May 14, 2010.  (ECF No. 22.)

20          On July 1, 2010, this Court issued a Report and Recommendation that Defendants' Motion to

21  Dismiss be Granted.  (ECF No. 23.)  Shortly thereafter, Plaintiff filed a Motion for Leave to File a

22  First Amended Complaint.  (ECF No. 24.)  On July 26, 2010, the Honorable Roger T. Benitez

23  granted Plaintiff's Motion for Leave to File a First Amended Complaint against Defendants Silva,

24  Akabari, Lipshir and Espinoza only, thereby rendering moot Defendants' Motion to Dismiss

25  Plaintiff's Complaint.  (ECF No. 25.)  Also on July 26, 2010, the Court issued an Order to Show

26  Cause as to why the Court should not dismiss all claims against Defendant S. Laming for want of

27  prosecution pursuant to Federal Rule of Civil Procedure 4(m).  (ECF No. 26.)  On August 31, 2010,

28

_____
[4]  It is apparent Plaintiff had surgery, but the medical records do not indicate the date of the surgery.

1  Judge Benitez dismissed all claims against Defendant S. Laming without prejudice for failure to

2  respond to the Court's July 26, 2010 order.[1]  (ECF No. 27.)

3        On December 1, 2010, Plaintiff filed his First Amended Complaint.  (ECF No. 34.)  On

4  January 14, 2011, Defendants Akbari, Silva, Liptscher, and Espinoza filed a Motion to Dismiss

5  Plaintiff's First Amended Complaint and/or Strike Portions Thereof.  (ECF No. 38.)  Plaintiff filed

6  an Opposition to Defendants' Motion to Dismiss on May 11, 2011.  (ECF No. 48.)  On May 20,

7  2011, Defendants filed a Reply to Plaintiff's Opposition.  (ECF No. 49.)

8      **C.**    **Defendants' Motion to Strike**

9        Defendants contend Plaintiff's First, Second, Fourth and Sixth causes of action are redundant

10  and cannot state an actionable claim against each of the Defendants.  (ECF No. 38-1 at 17.)  Under

11  Rule 12(f), a party may move to strike "from any pleading any insufficient defense or any redundant,

12  immaterial, impertinent, or scandalous matter."  FED.R.CIV.P. 12(f).  Upon the Court's review, the

13  First, Second, Fourth and Sixth causes of action do not appear to be entirely redundant.  Rather,

14  these causes of action discuss separate aspects of Plaintiff's claim for deliberate indifference to his

15  medical needs .  Based thereon, the Court RECOMMENDS Defendants' Motion to Strike Plaintiff's

16  First, Second, Fourth, and Sixth causes of action be **DENIED**.

17
18                     **III. STANDARD OF REVIEW**

19      **A.**    **Rule 12(b)(6) Motions to Dismiss**

20        A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

21  12(b)(6) tests the legal sufficiency of the claims in the complaint.  See Davis v. Monroe County Bd.

22  of Educ., 526 U.S. 629, 633 (1999).

23        A complaint must be dismissed if it does not contain "enough facts to state a claim to relief

24  that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has

25  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

26  reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, __

27  U.S. __, 129 S.Ct. 1937, 1949 (2009).  The court must accept as true all material allegations in the

28  _____
[1] Though Plaintiff mentions Laming in his First Amended Complaint, he does not appear to raise any claims against her.  To the extent Plaintiff does raise claims against Defendant Laming in his First Amended Complaint, the Court RECOMMENDS that these claims be DISMISSED in accordance with the Court's August 31, 2010 order.

1    complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint

2    in the light most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th

3    Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of

4    Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v. Kaplan, 792 F.2d

5    896, 898 (9th Cir. 1986).

6        The court does not look at whether the plaintiff will "ultimately prevail but whether the

7    claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236

8    (1974); see Bell Atl. Corp. v. Twombly, 550 U.S. at 563 n.8.  A dismissal under Rule 12(b)(6) is

9    generally proper only where there "is no cognizable legal theory or an absence of sufficient facts

10   alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)

11   (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

12   The court need not accept conclusory allegations in the complaint as true; rather, it must "examine

13   whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian,

14   978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865,

15   868 (9th Cir. 1993); see also Cholla Ready Mix, 382 F.3d at 973 (citing Clegg v. Cult Awareness

16   Network, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is not

17   required to accept legal conclusions cast in the form of factual allegations if those conclusions

18   cannot reasonably be drawn from the facts alleged[]").  "Nor is the court required to accept as true

19   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

20   Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

21       In addition, when resolving a motion to dismiss for failure to state a claim, courts may not

22   generally consider materials outside the pleadings.  Schneider v. Cal. Dep't of Corrs., 151 F.3d

23   1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir.

24   1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).

25   "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n.1.

26   This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a

27   motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d

28   232, 236 (7th Cir. 1993).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ." Parks Sch. of Bus., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002); Stone v. Writer's Guild of Am. W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

### B. Standards Applicable to Pro Se Litigants

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  Id.; see also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim."  Jones, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing Noll v. Carlson, 809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies.  Karim-Panahi, 839 F.2d at 623-24.  But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate.  See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

///

1    **C.      Stating a Claim Under 42 U.S.C. § 1983**

2        To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person

3    acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the

4    plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United

5    States.

6                                       **IV. DISCUSSION**

7    **A.      Eighth Amendment Deliberate Indifference**

8        In his First, Second, Fourth, and Sixth causes of action, Plaintiff contends Defendants

9    Liptscher, Espinoza, Silva and Akbari were deliberately indifferent to his medical needs.  (ECF No.

10   34.)

11       Defendants contend there is no basis for a finding of deliberate indifference to Plaintiff's

12   serious medical needs, as there is no evidence to support the claim of a denial, delay, or intentional

13   interference with medical treatment.  (ECF No. 38-1 at 18-19.)

14       "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action

15   under § 1983."  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  "A determination of 'deliberate

16   indifference' involves an examination of two elements: the seriousness of the prisoner's medical

17   need and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,

18   1059 (9th Cir. 1992).

19       First, "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could

20   result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin,

21   974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).

22       Second, to establish deliberate indifference, a defendant must purposefully ignore or fail to

23   respond to a prisoner's pain or possible medical need.  McGuckin, 974 F.2d at 1060.  Deliberate

24   indifference to medical needs occurs when prison officials "'deny, delay, or intentionally interfere

25   with medical treatment.'"  Hunt v. Dental Dep't, 865 F.2d 198, 201 (9th Cir. 1989) (quoting

26   Hutchinson v. US, 838 F.2d 390, 394 (9th Cir. 1984)).  Specifically, "this is true whether the

27   indifference is manifested by prison doctors in their response to the prisoner's needs, or by prison

28   guards in intentionally denying or delaying access to medical care or intentionally interfering with

the treatment once prescribed."  Estelle, 429 U.S. at 104-05 (footnotes omitted).  "In order to show

deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 302 (1991).  The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. Estelle, 429 U.S. at 106; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard.") (citing Hallett v. Morgan, 296 F.3d 732, 1204 (9th Cir. 2002); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was harmful.  See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985); Hunt, 865 F.2d at 200 ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation."); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable.").  While the harm caused by delay need not necessarily be "substantial," McGuckin, 974 F.2d at 1060 & n.2;  see also Wood v. Housewright, 900 F.2d at 1336, 1339-40 (9th Cir. 1990) (Reinhardt, J., dissenting), the Eighth Amendment is violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case," Hallett, 287 F.3d at 1206, and "a finding that the inmate was seriously harmed by the defendant's action or inaction tends to provide additional support to a claim that the defendant was 'deliberately indifferent' to the prisoner's medical needs." McGuckin, 974 F.2d at 1060.

However, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Further, a prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.  See Roberts v. Spalding, 783 F.2d 867, 870 (9th Cir. 1986).

///

///

**1.      Defendants Liptscher and Espinoza**

Plaintiff contends Defendants Liptscher and Espinoza acted in reckless disregard of his medical needs by bringing him to the prison medical facility instead of a hospital after he suffered injuries in a car accident.  (ECF No. 34 at 9-10.)  Plaintiff states that upon his arrival back in prison, he was seen by Registered Nurse S. Laming, who advised Plaintiff that he was fine to return to his cell and that he should take Ibuprofen and drink tea. Id. at 10.  Plaintiff contrasts the medical treatment provided to the corrections officers, who were taken to the hospital, and himself, who was returned to be treated by jail medical staff, and claims the difference in treatment received is indicative of deliberate indifference to his serious medical needs.  Id.  Further, Plaintiff contends that as a result of Defendants' decision to return him to prison for medical treatment, months passed before he received treatment from medical doctors, pain medications, x-rays, a cane and a MRI, causing him to suffer harm and pain severe enough to require narcotic medication in order to sleep. Id. at 11-14.

Defendants Liptscher and Espinoza contend they took Plaintiff back to the prison to be examined by prison medical staff within one hour of the accident.  (ECF No. 38-1 at 18.)  Therefore, Defendants contend "there is nothing which would or could give rise to a deliberate indifference claim based on a denial o[r] delay of medical care against either defendant Liptscher or Espinoza, the transportation officers." Id. at 18.

Here, Plaintiff adequately pleads sufficient facts for the first element of deliberate indifference, his serious medical need. McGuckin, 974 F.2d at 1059.  Plaintiff states that, following the car accident, he suffered injuries to his wrist, shoulder, back, and the right side of his body, and paramedics indicated Plaintiff should be taken to the hospital to receive medical treatment.  (ECF No. 34 at 9-10.)  A failure to treat Plaintiff's injuries or alleviate his pain with medication likely would have resulted in "unnecessary and wanton infliction of pain," and thus Plaintiff adequately pleads sufficient facts to demonstrate his serious medical need. McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).

However, Plaintiff has not adequately plead sufficient facts for the second element, that Defendants acted with a culpable state of mind in denying, delaying, or interfering with Plaintiff's medical care. Wilson, 501 U.S. at 302; Hunt, 865 F.2d at 201.  Contrary to Plaintiff's assertions of

- 13 -

delay, the records attached to Plaintiff's original complaint show Defendants Liptscher and Espinoza returned Plaintiff to R.J.D. after the car accident, and Plaintiff received medical treatment within one hour of the alleged incident.  (Attachments at 6.)  Therefore, Defendants Liptscher and Espinoza ensured Plaintiff received prompt medical care by driving him back to R.J.D. after the accident and did not deny, delay, or interfere with Plaintiff's medical care.  Additionally, although Plaintiff preferred to receive treatment for his injuries at a community hospital instead of at R.J.D., he had no constitutional right to outside medical care.  Roberts, 783 F.2d at 870. Thus, Plaintiff does not allege facts indicating Defendants Liptscher and Espinoza acted with a culpable state of mind in denying, delaying, or interfering with Plaintiff's medical care.  Wilson, 501 U.S. at 302; Hunt, 865 F.2d at 201.

## 2.     Defendants Silva and Akbari

Plaintiff contends that although Defendants Silva and Akbari made orders for medication, x-rays, a MRI, a cane, and physical therapy for Plaintiff, these Defendants were deliberately indifferent to his medical needs by not following up to ensure these orders were complied with and failing to check up on Plaintiff for several months.  Id. at 18.  Specifically, Plaintiff contends Defendant Silva ordered a MRI for Plaintiff on May 20, 2008, which took until October 2008 to receive.  Id. at 19-20.

Defendants Silva and Akbari contend they did not intentionally deny or delay Plaintiff's medical treatment.  (ECF No. 38-1 at 19.)  Conversely, Defendants contend it is clear from the documents attached to Plaintiff's original complaint that Defendants Silva and Akbari took immediate and responsive action to provide Plaintiff with medical care.  Id. at 9.

As discussed above, Plaintiff has plead sufficient facts for the first element of deliberate indifference to medical needs by demonstrating his serious medical need.  Additionally, Plaintiff has met the second element of deliberate indifference to medical needs by alleging facts showing Defendants Akbari and Silva purposefully ignored or failed to respond to Plaintiff's pain or possible medical need.  McGuckin, 974 F.2d at 1060.  With regard to Defendant Akbari, Plaintiff contends Akbari  knew of Plaintiff's serious medical condition because Akbari reviewed Plaintiff's May 3, 4, 5, and 8 medical requests and prescribed pain medication and x-rays in the days following the accident.  (ECF No. 34 at 18, 19.)  Despite this knowledge, Plaintiff contends Akbari failed to

follow-up on Plaintiff's condition, resulting in a delay in Plaintiff receiving his pain medication.  Id.
Plaintiff alleges this delay in medical treatment resulted in an unsuccessful surgery which has caused
him great pain.  Id. at 14.  Therefore, Plaintiff has plead sufficient facts to show Akbari's delay in
treatment was harmful, thereby constituting deliberate indifference to his medical needs.  McGuckin,
974 F.2d at 1060.

Similarly, with regard to Defendant Silva, Plaintiff has plead sufficient facts demonstrating
Defendant Silva purposefully ignored or failed to respond to Plaintiff's pain or possible medical
need.  McGuckin, 974 F.2d at 1060.  Plaintiff contends Silva ordered a MRI for Plaintiff on May 20,
2008, which Plaintiff did not actually receive until October 2008.  (ECF No. 34 at 19.)  Plaintiff
contends Silva's failure to follow-up on his order or check on Plaintiff's condition resulted in a delay
in receiving adequate medical attention, which ultimately resulted in an unsuccessful surgery.  Id. at
14, 19-20.  Therefore, Plaintiff has also plead sufficient facts to show Silva's delay in treatment was
harmful, thereby constituting deliberate indifference to his medical needs.  McGuckin, 974 F.2d at
1060.

Based on the foregoing, while Plaintiff has not adequately plead facts that meet the high legal
standard for deliberate indifference for Defendants Liptscher and Espinoza, Plaintiff has plead
sufficient facts demonstrating Defendants Akbari and Silva were deliberately indifferent to his
medical needs.  Toguchi, 391 F.3d at 1060.  Accordingly, the Court RECOMMENDS Defendants'
Motion to Dismiss Plaintiff's Eighth Amendment Claim of deliberate indifference to his medical
needs be **GRANTED** with leave to amend against Defendants Liptscher and Espinoza, and
**DENIED** as to Defendants Akbari and Silva.

**B.    Conspiracy**

In his Third Cause of Action, Plaintiff contends Defendants acted in concert and conspired to
deny Plaintiff his right to proper medical care.  (ECF No. 34 at 26-27.)

Defendants contend, as an initial matter, that Plaintiff cannot demonstrate any deliberate
indifference to his medical needs.  (ECF No. 38-1 at 20.)  Second, Defendants contend Plaintiff's
state law conspiracy claims cannot withstand scrutiny because public employees are not liable for an
injury caused .  Id.

1    To prove a conspiracy in violation of Section 1983, a plaintiff must show:  (1) an agreement

2    between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in

3    furtherance of the conspiracy and; (3) a constitutional violation.  See Gilbrook v. City of

4    Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999) (en banc); Margolis v. Ryan, 140 F.3d 850, 853

5    (9th Cir. 1998); see also Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999); Pangburn v.

6    Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir.

7    1996); Villanueva v. McInnis, 723 F.2d 414, 416 (5th Cir. 1984).  Because conspiracies, by their

8    very nature, are secret agreements, "[a] defendant's knowledge of and participation in a conspiracy

9    may be inferred from circumstantial evidence and from evidence of the defendant's actions."

10   Gilbrook, 177 F.3d at 857-58.

11        However, pleading a conspiracy requires more than a conclusory allegation that defendants

12   conspired to deprive plaintiff's civil rights. The Ninth Circuit applies a heightened pleading standard

13   to conspiracy claims under Section 1983 and has held that mere conclusory allegations of conspiracy

14   (i.e. a bare allegation that a defendant "conspired" with another) are insufficient to state a claim.[1]

15   See Harris v. Roderick, 126 F.3d 1189, 1195 (9th Cir. 1997); Buckey v. County of Los Angeles, 968

16   F.2d 791, 794 (9th Cir. 1992); Woodrum v. Woodward County, 866 F.2d 1121, 1126-27 (9th Cir.

17   1989).  Rather, "[t]o state a claim for a conspiracy to violate one's constitutional rights under section

18   1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."

19   Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989); see also Lee v. City of Los Angeles,

20   250 F.3d 668, 679 n.6 (9th Cir. 2001) (holding that plaintiffs must allege facts which are "specific

21   and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion

22   for summary judgment based on qualified immunity."); Buckey, 968 F.2d at 794.  A plaintiff can

23   meet the heightened pleading standard by alleging "which defendants conspired, how they conspired

24   and how the conspiracy led to a deprivation of his constitutional rights even though he does not

25   identify which officer said or did what at which particular time."  Harris, 126 F.3d at 1196.

26

27   _____

     [1] The Ninth Circuit has specifically held that conspiracy claims, since they require the plaintiff to show
28   that the defendant agreed to join the conspiracy, see Margolis, 140 F.3d at 853, are subject to this
     heightened pleading standard.  See Harris, 126 F.3d at 1195; Mendocino Envtl. Ctr. v. Mendocino
     County, 14 F.3d 457, 459 (9th Cir. 1994) (applying identical standard to conspiracy claim in Bivens
     action).

1    Here, Plaintiff has failed to allege any facts which show an agreement or meeting of the

2  minds to violate any of Plaintiff's constitutional rights.  <u>Woodrum</u>, 866 F.2d at 1126.  Further,

3  Plaintiff has failed to allege any facts which show an overt act in furtherance of the conspiracy.

4  <u>Gilbrook</u>, 177 F.3d at 856-57.  Rather, Plaintiff has made conclusory allegations of conspiracy,

5  which are insufficient to state a claim.  <u>See</u> <u>Harris</u>, 126 F.3d at 1195.  Accordingly, the Court

6  RECOMMENDS Defendants' motion to dismiss Plaintiff's conspiracy claim be GRANTED with

7  leave to amend.

8    **C.**    **<u>Breach of Implied and Express Contract</u>**

9    In his Fifth Cause of Action, Plaintiff contends Defendants violated the express and implied

10  contract existing between him and the California Department of Corrections and Rehabilitation

11  pursuant to Cal. Code Regs. Title 15, Rules and Regulations.  (ECF No. 34 at 29-33.)  Specifically,

12  Plaintiff contends Defendants alleged deliberate indifference to his medical needs breaches the

13  aforementioned contract.  <u>Id.</u>

14    Defendants contend Plaintiff cannot demonstrate the existence of an implied or express

15  contract between himself and Defendants.  (ECF No. 38-1 at 21.)

16    To state a claim for breach of contract under California law, Plaintiff must establish: (1) the

17  existence of a contract; (2) Plaintiff's performance or excuse for nonperformance of the contract; (3)

18  Defendants' breach of the contract; and (4) resulting damages.  CA BAJI 13.85 (Spring 2011 Ed.);

19  <u>see also</u> <u>Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co.</u>, 116 Cal. App. 4th 1375, 1391 n. 6

20  (2004) (citing <u>Careau & Co. v. Security Pacific Business Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1388

21  (1990)).

22    Here, Plaintiff fails to state sufficient facts to establish the elements for a breach of contract

23  claim.  First, the Court's review of Title 15, Article 9, §§ 3350, 3351, and 3355 indicates these

24  provisions do not support the proposition that there is an express or implied contract between

25  Plaintiff and Defendants.  Consequently, Plaintiff is unable to establish the existence of a contract.

26  Further, Plaintiff is unable to state facts either demonstrating his performance or excuse for

27  nonperformance of the alleged contract, or Defendants' breach of the alleged contract.  Accordingly,

28  the Court RECOMMENDS Defendants' motion to dismiss Plaintiff's breach of contract claim be

    GRANTED with prejudice.

**D.      Intentional Infliction of Emotional Distress**

In his Seventh Cause of Action, Plaintiff raises a claim for intentional infliction of emotional distress.  (ECF No. 34 at 34-35.)  Plaintiff contends Defendants "became increasingly uncaring of [P]laintiff's injuries."  Id.  Plaintiff contends Defendants' "outrageous conduct" was "intentional" and "malicious."  Id.

Defendants contend Plaintiff has failed to state a viable claim for intentional infliction of emotional distress.  (ECF No. 38-1 at 21-22.)

The elements of a cause of action for intentional infliction of emotional distress are (1) outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress.  Cole v. Fair Oaks Fire Protection Dist., 43 Cal.3d 148, 155 n.7 (1987). "'Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991).

Here, Plaintiff fails to state sufficient facts to establish the elements for an intentional infliction of emotional distress claim.  First, Plaintiff fails to allege facts showing Defendants' conduct was "outrageous."  With regard to Defendants Liptscher and Espinoza, their decision to send Plaintiff to receive medical attention at the prison rather than at a hospital was not "so extreme as to exceed all bounds of that usually tolerated in a civilized society."  Christensen, 54 Cal.3d at 903.  Similarly, Defendants Silva's and Akbari's alleged failure to ensure prison staff complied with their orders for medication, x-rays, a MRI, a cane, and physical therapy does not rise to the level of "outrageous conduct" necessary to state a claim for intentional infliction of emotional distress.  See Id.  Moreover, Plaintiff fails to assert facts demonstrating Defendants intentionally caused, or recklessly disregarded the probability of causing emotional distress.  Accordingly, the Court RECOMMENDS Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim be GRANTED with leave to amend.

**E.      Negligence**

In his Eighth Cause of Action, Plaintiff contends Defendants were "negligent, reckless and [acted] without due regard for the rights, privileges and interests of [P]laintiff's welfare."  (ECF No.

34 at 35-36.)  Specifically, in being deliberately indifferent to his medical needs, Plaintiff contends Defendants failed to exercise their duty of care.  Id.

Defendants contend Plaintiff cannot demonstrate Defendants were deliberately indifferent to his serious medical needs, thereby foreclosing his claim for negligence.  (ECF No. 38-1.)

Under California law, an action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 673; 6 Witkin, SUMMARY OF CAL. LAW (9th ed. 1988) Torts, § 732 at 60.

Here, Plaintiff alleges sufficient facts to demonstrate Defendants acted negligently.  First, as to all Defendants, Plaintiff contends Defendants had a "duty to act with...'due care' towards [P]laintiff."  (ECF No. 34 at 35.)  Second, Plaintiff alleges Defendants Liptscher and Espinoza's decision to take Plaintiff back to the prison rather than a hospital constituted a breach of their duty of care.  See Id. at 36.  With regard to Defendants Akbari and Silva, Plaintiff contends the delay resulting from their failure to check on Plaintiff's condition and follow-up on their medical orders constitutes a breach of their duty of care as doctors.  See Id.  Third, as to all Defendants, Plaintiff contends Defendants' action have caused him humiliation, a denial of adequate medical care, mental anguish, severe tension, profound shock, and anxiety.  Id.  Thus, Plaintiff has plead facts sufficient to establish all three elements of a negligence cause of action.  Ann M., 6 Cal.4th at 673. Accordingly, the Court RECOMMENDS Defendants' motion to dismiss Plaintiff's negligence claim be DENIED.

## V. CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that:

1)    Defendants' Motion to Strike Plaintiff's First, Second, Fourth, and Sixth causes of action be **DENIED**;

2)    Defendants' Motion to Dismiss Plaintiff's Eighth Amendment Claim of deliberate indifference to his medical needs  be **GRANTED** with leave to amend against Defendants Liptscher and Espinoza, and **DENIED** as to Defendants Akbari and Silva;

3)      Defendants' motion to dismiss Plaintiff's conspiracy claim be **GRANTED** with leave to amend;

4)      Defendants' motion to dismiss Plaintiff's breach of contract claim be **GRANTED** with prejudice;

5)      Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim be **GRANTED** with leave to amend;

6)      Defendants' motion to dismiss Plaintiff's negligence claim be **DENIED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1994).

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **August 5, 2011.** This document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed no later than **August 19, 2011**. The parties are further advised that failure to file objections within the specified time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

        **IT IS SO ORDERED.**

DATED: July 13, 2011

_____
LOUISA S PORTER
United States Magistrate Judge

cc:       The Honorable Roger T. Benitez
          all parties